UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KENVILLE ROBERTSON, | * |
| Petitioner, | * |
| v. | * Civil Action No. 16-cv-10609-ADB |
| KELLY RYAN, | * |
| Respondent. | * |

## MEMORANDUM AND ORDER

BURROUGHS, D.J.

On November 22, 2011, following a jury trial in Norfolk County Superior Court ("Superior Court"), Petitioner Kenville Robertson ("Petitioner" or "Robertson") was found guilty of aggravated rape of a child and related counts and sentenced to a term of ten to twelve years at MCI Cedar Junction followed by ten years of probation. Currently pending before this Court is Robertson's petition for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2254 ("Petition"). [ECF No. 1]. The Petition identifies one ground for relief: that "[t]he introduction of prior bad act evidence and the instruction to the jury that the prior bad act evidence could be used to corroborate all of the alleged victim's testimony" violated the Petitioner's rights under the Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution, including his rights to due process of law, to remain silent and not to incriminate himself, to present a complete defense and to not be required to simultaneously defend against uncharged, but pending, criminal conduct. [ECF No. 1 at 19]. For the reasons set forth below, the Petition is DENIED.

## I. FACTUAL BACKGROUND

In Commonwealth v. Robertson, 35 N.E.3d 771 (Mass. App. Ct. 2015), the Massachusetts Appeals Court ("Appeals Court") summarized the relevant facts as follows:[1]

> The defendant is the biological father of the younger brother of the victim, N.M. Although the defendant did not live with N.M., he had a key to her house and visited often. N.M. called the defendant, "Dad," and he provided for her financially.[2] In 2004, when N.M. was eight years old, the defendant began sexually abusing her.[3] The abuse occurred while N.M. and the defendant slept in the same bed, along with N.M.'s mother and brother. N.M. testified that on numerous occasions the defendant performed oral sex on her, engaged in vaginal intercourse, forced her to touch his penis, and touched her breasts, vagina, and buttocks. The defendant warned N.M. that if she reported the abuse "the police would get involved," and N.M. believed that meant she would be taken away from her family. The abuse continued until N.M. was thirteen years old.
>
> The defendant's biological daughter, J.R., also testified at trial.[4] She stated that from around 1990, when she was approximately seven or eight years old, until about 1994 or 1996 (when she was eleven or twelve years old), the defendant sexually abused her.[5] During that period of time, J.R. and her siblings lived with the defendant while their mother remained in St. Vincent. J.R. testified that the defendant would call her into his bedroom and then force her to perform oral sex

---

[1] In a habeas case, state court "factual findings are entitled to a presumption of correctness that can be rebutted only by clear and convincing evidence to the contrary." Rashad v. Walsh, 300 F.3d 27, 35 (1st Cir. 2002) (internal quotations omitted).

[2] In footnote one the Appeals Court stated, "N.M. testified that one of the reasons she did not report the abuse was because she knew the defendant was giving her mother money for a restaurant."

[3] In footnote two the Appeals Court stated, "At the time when the abuse began, N.M. lived in Boston. When she was thirteen years old, N.M. moved to Dover, where the sexual abuse underlying the defendant's convictions took place. The defendant properly does not raise any issue on appeal related to the uncharged sexual assaults. Commonwealth v. Machado, 339 Mass. 713, 715, 162 N.E.2d 71 (1959)."

[4] In footnote three the Appeals Court stated, "J.R.'s testimony was the subject of the motion in limine that the defendant asserts was improperly allowed."

[5] In footnote four the Appeals Court stated, "Although J.R. testified at trial that the abuse ended in 1994, the parties refer in their motion in limine memoranda and briefs to the abuse ending in 1996. Because the issue here is whether the judge abused his discretion by ruling, based on the facts presented to him, that the abuse was not too remote, we treat the abuse as having ended in 1996."

on him and to engage in vaginal intercourse. The defendant would also rub her "chest area." J.R. reported the abuse to a teacher, and a social worker was sent to visit her at home. Subsequently, the defendant told J.R. that if she continued to report the abuse, she and her siblings would be put in different foster homes and she would never see them again. Afterwards, J.R. recanted her allegations.[6]

Robertson, 35 N.E.3d at 773.

## II. PROCEDURAL BACKGROUND

Before trial, the Commonwealth filed a motion in limine to admit evidence that Petitioner sexually abused J.R., his biological daughter, between 1990 and 1994. [Suppl. Answer ("S.A.") at 105–14]. On July 26, 2011, the trial court (Kaplan, J.) granted the motion in limine and ruled that the prior bad act evidence could be admitted, subject to appropriate time limits and limiting instructions, "to prove that [Petitioner] had a plan to sexually assault young girls with whom he had a parenting like relationship, or to show [his] pattern of conduct in doing so, or to corroborate the testimony of the alleged victim concerning the crimes charged." [Id. at 126, 129].

On November 15, 2011, the first day of trial, counsel discussed the motion in limine ruling with the trial court. [Id. at 373–74]. Petitioner's trial counsel advised the trial court (Cosgrove, J.) that "Judge Kaplan's rulings . . . left some flexibility to the trial judge as to how much of the testimony of the biological daughter [J.R.] would come forward" and renewed his objection to any testimony from J.R. being admitted. [Id. at 373]. In addition, Petitioner's trial counsel objected to any testimony that J.R. became pregnant due to the sexual abuse as unduly prejudicial and inflammatory. [Id. at 374]. The Commonwealth agreed to exclude evidence of J.R.'s pregnancy. [Id.].

---

[6] In footnote five the Appeals Court stated, "We note that in both instances, it appears that the defendant's continued abuse of the victims was tied to his access to them. His abuse of J.R. ceased shortly after her mother moved from St. Vincent to Boston and began living with them and his abuse of N.M. stopped after she reported the abuse to her mother."

3

During trial, when Petitioner's trial counsel anticipated that the Commonwealth was about to elicit testimony from J.R. on direct examination concerning her abuse, Petitioner's trial counsel requested "that the instruction be given at this time regarding bad acts and what relevance they have to this case." [Id. at 844–45]. The trial court then gave the following instruction:

> Ladies and gentlemen, at this point I want to underscore for you again that Mr. Robertson is not charged here with committing any crime other than the crimes specified in the indictments that you heard the Clerk read at the start of the trial and that will be submitted to you at the end of the case. As you're aware, those indictments involve events that happened in Norfolk County and the alleged victim was [N.M.].
>
> Now, I anticipate that at this point, that you are going to hear testimony involving defendant's daughter on the issue of the Commonwealth's theory that the defendant raped and assaulted [N.M.] as part of a common scheme or plan. You may consider whether this testimony corroborates the testimony of [N.M.] and shows a common scheme and pattern of behavior, modus operandi, if you will. You may also consider it to the extent it shows motive and intent.
>
> You may not consider this evidence for any other purpose; specifically, you may not use it to conclude that if you determine the defendant committed acts with his daughter [J.R.], it must follow that he committed acts with the Complainant [N.M.], as well.

[Id. at 845–46]. J.R.'s testimony on direct examination followed. [Id. at 846–53]. Petitioner's trial counsel did not object to J.R.'s testimony on sexual abuse, see [id.], but objected to a question about J.R.'s reporting of the abuse, [id. at 849]. Petitioner's trial counsel then cross-examined J.R. at length. [Id. at 853–99]. On redirect examination, when J.R. was asked by the Commonwealth why she contacted law enforcement in 2010, J.R. stated that it was "because I heard that [Petitioner] had done it again . . . ." [Id. at 902]. An objection from Petitioner's trial counsel cut off the response, and the trial court instructed the jury to consider J.R.'s response only for state of mind. [Id. at 902–03].

At the close of trial, the final charge to the jury included the following instruction:

4

> You have also heard testimony about incidents involving the defendant's daughter, [J.R.], on the issue of the Commonwealth's theory that the defendant raped and assaulted the complainant [N.M.] as part of a common scheme or plan. You may consider whether this testimony corroborates the testimony of [N.M.] and shows a common scheme and pattern of behavior, modus operandi, if you will, and you may consider it to the extent it shows motive and intent. You may not consider this evidence for any other purpose. Specifically, you may not use it to conclude that if you determine the defendant committed acts with his daughter [J.R.], it must follow that he committed acts with the complainant [N.M.] as well. Moreover, you may not take this testimony as a substitute for the proof that the defendant committed the crimes charged in the indictments. Nor may you consider it as evidence that the defendant has a criminal personality or a bad character.

[S.A. at 1085–86].

On November 22, 2011, a jury found Petitioner guilty on all counts. [Id. at 6]. Also on November 22, 2011, Petitioner filed a notice of appeal. [Id. at 7]. The Appeals Court stayed the appeal until November 2012 and gave Petitioner leave to file a motion for new trial, which he filed on October 22, 2012. [Id. at 8, 10, 132–53].

Petitioner's motion for a new trial challenged the motion in limine ruling allowing testimony from J.R. and challenged the admission of the testimony as not probative of a course of conduct and unduly prejudicial. [Id. at 134–37]. The motion for a new trial also alleged a due process violation. [Id. at 152–53].[7] Attached to the motion was an affidavit from one of Petitioner's daughters who was present for the verdict, but not present for trial. [Id. at 139–41]. She stated that a juror mistook her for J.R. and said, "Good job, if it wasn't for your testimony, the jury would not have found [Petitioner] guilty." [Id. at 140].

---

[7] Specifically, the Petitioner argued that the admission of J.R.'s testimony, which related to incidents that were the subject of a pending indictment in Suffolk County, violated his due process rights guaranteed by the Fifth and Fourteenth Amendments because it forced him to either testify and relinquish his constitutional right to remain silent, or forgo his right to testify in his own defense. [S.A. at 152–53]. Petitioner also argues that the admission of J.R.'s testimony "placed [him] in a situation in which he was compelled to simultaneously defend against both the accusations of N.M. and J.R." and to disclose his defenses for the future trial on the indictment pending in Suffolk County. [Id.].

5

The trial court held a hearing on the motion for new trial and denied the motion. [Id. at 209–24]. Petitioner appealed the denial of his motion for a new trial and presented the following issues for review: (i) whether the motion judge erred when he allowed the motion in limine; (ii) whether the trial judge erred when he failed to sua sponte reconsider the motion judge's order or limit the prior bad act testimony given its prejudicial effect; (iii) whether the trial judge erred when he held that prior bad act evidence can be used to corroborate victim testimony; and, (iv) ineffective assistance of counsel. [Id. at 18–19]. The Appeals Court affirmed both the conviction and the denial of Petitioner's motion for a new trial. Robertson, 35 N.E.3d at 771–78.

Robertson then filed an application for leave to obtain further appellate review ("ALOFAR") with the Massachusetts Supreme Judicial Court ("SJC"), which was summarily denied. Commonwealth v. Robertson, 41 N.E.3d 1092 (Table); [S.A. at 319–56]. The ALOFAR presented one issue, "whether the Court erred in holding that prior bad act evidence may be utilized to corroborate a victim's testimony." [S.A. at 340]. Robertson subsequently filed the instant Petition, which raises as its one ground for relief "[t]he introduction of prior bad act evidence and the instruction to the jury that the prior bad act evidence could be used to corroborate all the alleged victim's testimony." [ECF No. 1 at 19].

### III. LEGAL STANDARD

A federal court's review of a state criminal conviction is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). See 28 U.S.C. § 2254. The AEDPA prohibits a federal court from granting habeas relief to a state prisoner if the prisoner has not exhausted his federal constitutional claims in state court. 28 U.S.C. § 2254(b)(1)(A); see O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a

habeas petition."). A claim for habeas relief is exhausted if it has been "fairly and recognizably" presented in state court. Sanchez v. Roden, 753 F.3d 279, 294 (1st Cir. 2014) (quoting Casella v. Clemons, 207 F.3d 18, 20 (1st Cir. 2000)).

Where a state prisoner has exhausted his federal constitutional claims in state court, the federal court must determine whether the state court adjudicated the petitioner's claims on the merits. See 28 U.S.C. § 2254(d). With respect to any claim that was adjudicated on the merits in state court, a federal court must afford "substantial deference" to the state court and may only grant habeas relief if the state court proceedings

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2); Jackson v. Marshall, 864 F.3d 1, 9 (1st Cir. 2017).

A state court decision is "contrary to" clearly established Supreme Court precedent if the state court arrives at a conclusion opposite that reached by the Supreme Court on a question of law or if the state court decides a case differently from a decision of the Supreme Court on a materially indistinguishable set of facts. Williams v. Taylor, 529 U.S. 362, 405 (2000). A state court unreasonably applies federal law when it "correctly identifies the governing legal principles, but (i) applies those principles to the facts of the case in an objectively unreasonable manner; (ii) unreasonably extends clearly established legal principles to a new context where they should not apply; or (iii) unreasonably refuses to extend established principles to a new context where they should apply." Gomes v. Brady, 564 F.3d 532, 537 (1st Cir. 2009). An unreasonable application requires "some increment of incorrectness beyond error." Norton v. Spencer, 351 F.3d 1, 8 (1st Cir. 2003) (internal quotations omitted). A petitioner must show that

7

the state court decision applied clearly established law in a way that was "objectively unreasonable." Sanchez, 753 F.3d at 299 (quoting White v. Woodall, 572 U.S. 415, 419 (2014)) (internal quotations omitted).

A state court judgment is based on an unreasonable determination of the facts if the decision is "objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). "The petitioner carries the burden of proof." Cullen v. Pinholster, 563 U.S. 170, 181 (2011). In conducting a habeas review, a federal court is limited to deciding whether the conviction violated the Constitution, laws, or treaties of the United States. Estelle v. McGuire, 502 U.S. 62, 68 (1991) (citing 28 U.S.C. § 2241). Furthermore, "[e]rrors based on violations of state law are not within the reach of federal habeas petitions unless there is a federal constitutional claim raised." Kater v. Maloney, 459 F.3d 56, 61 (1st Cir. 2006).

The same deferential standard is not applied in cases where the state court has "fail[ed] to consider [the claims] on the merits or resolve them on adequate and independent state law grounds;" instead, in those cases, the federal court reviews the petitioner's claims de novo. Jackson, 864 F.3d at 9 (citing Jenkins v. Bergeron, 824 F.3d 148, 152 (1st Cir. 2016)); see Clements v. Clarke, 592 F.3d 45, 52 (1st Cir. 2010) ("[A] state court decision that does not address the federal claim on the merits falls beyond the ambit of [the] AEDPA. When presented with such unadjudicated claims, the habeas court reviews them de novo."). "When a federal claim has been presented to a state court and the state court has denied relief," however, the federal court may assume "that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Harrington v. Richter, 562 U.S. 86, 99 (2011).

## IV. DISCUSSION

### A. Exhaustion of Federal Constitutional Claim in State Court

Habeas petitioners must exhaust their state remedies before filing a petition with the federal court. 28 U.S.C. § 2254(b)(1)(A). "This exhaustion requirement . . . is born of the principle 'that as a matter of comity, federal courts should not consider a claim in a habeas corpus petition until after the state courts have had an opportunity to act.'" Coningford v. Rhode Island, 640 F.3d 478, 482 (1st Cir. 2011) (quoting Rose v. Lundy, 455 U.S. 509, 515 (1982)).

"In order to exhaust a claim, [a] petitioner must 'present the federal claim fairly and recognizably' to the state courts, meaning that he 'must show that he tendered his federal claim in such a way as to make it probable that a reasonable jurist would have been alerted to the existence of the federal question.'" Clements v. Maloney, 485 F.3d 158, 162 (1st Cir. 2007) (quoting Casella, 207 F.3d at 20). Put another way, "fair presentation requires that the constitutional analysis necessary to resolve the ultimate question posed in the habeas petition and in the state court proceedings, respectively, be substantially the same." Scarpa v. DuBois, 38 F.3d 1, 6 (1st Cir. 1994). The First Circuit has recognized five ways in which a petitioner may satisfy the "fairly presented" requirement:

> reliance on a specific provision of the Constitution, substantive and conspicuous presentation of a federal constitutional claim, on-point citation to federal constitutional precedents, identification of a particular right specifically guaranteed by the Constitution, and assertion of a state-law claim that is functionally identical to a federal constitutional claim.

Coningford, 640 F.3d at 482. Courts in Massachusetts look to a petitioner's ALOFAR to determine whether the exhaustion requirement has been met. Clements, 485 F.3d at 162 (citing Mele v. Fitchburg Dist. Ct., 850 F.2d 817, 823 (1st Cir. 1988)); Barresi v. Maloney, 296 F.3d 48, 52 (1st Cir. 2002) (citing Adelson v. DiPaola, 131 F.3d 259, 263 (1st Cir. 1997)). The general rule is that claims omitted from an ALOFAR are unexhausted. See Baldwin v. Reese, 541 U.S.

27, 32 (2004) ("[O]rdinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so.").

Based on his ALOFAR, Petitioner has not exhausted the federal due process claim presented in his habeas Petition. The habeas Petition raises as its one ground for relief "introduction of prior bad act evidence and the instruction to the jury that the prior bad act evidence could be used to corroborate all the alleged victim's testimony," which Petitioner claims violated his rights under the Fifth, Sixth, and Fourteenth Amendments. [ECF No. 1 at 19]. In contrast, the ALOFAR focused exclusively on Massachusetts case law concerning the use of prior bad act evidence, and it does not reference due process rights; Fifth, Sixth, or Fourteenth Amendment rights; or cite to federal constitutional precedents. [S.A. at 341–55]; see Coningford, 640 F.3d at 483 (concluding that where Petitioner "relied conspicuously and exclusively on state evidentiary rules, accompanied by generalized plaints about prejudice and unfairness" that "[a]lleging lack of a fair trial does not convert every complaint about evidence . . . into a federal due process claim." (quoting Dougan v. Ponte, 727 F.2d 199, 201 (1st Cir. 1984))). While the ALOFAR makes reference to a "substantial risk of a miscarriage of justice" and contends that "justice was not done in this case," these kinds of oblique references are insufficient to identify a federal due process claim. See [S.A. at 341, 355]; Adelson, 131 F.3d at 263 ("[T]he mere incantation of constitutional buzzwords, unaccompanied by any federal constitutional analysis, does not suffice to carry the burden of demonstrating fair presentment of a federal claim.").[8]

---

[8] In certain situations, a federal court may look beyond the ALOFAR to the pleadings and briefs submitted by a petitioner to the lower state courts, which provide "a backdrop against which his

Although the Court cannot grant habeas relief where Petitioner has failed to exhaust his state remedies, it nevertheless proceeds to consider the Petition on the merits. See 28 U.S.C. § 2254(b)(1)–(2) (permitting courts to deny habeas relief on the merits when state remedies not exhausted).

B.  **Denial of Ground One on the Merits**

The Petition challenges Robertson's conviction as violative of the Fifth, Sixth, and Fourteenth Amendments on the grounds that the admission of prior bad act evidence to corroborate victim testimony and the related jury instructions violated his due process right to a fair trial, his right to remain silent and not incriminate himself, and his right to present a complete defense ("Ground One"). [ECF No. 1 at 19]. The memorandum filed in support of the Petition focuses only on Petitioner's right to a fair trial and does not contain arguments in support of the alleged violations of Petitioner's "right to remain silent and not incriminate himself" and his "right to present a complete defense." See [ECF No. 26; ECF No. 34 at 6 n.4]. These elements of Petitioner's claim in Ground One are therefore waived, and the Court addresses only the alleged violation of Petitioner's due process right to a fair trial. See Cabrera v. Medeiros, No. 15-cv-13768-DJC, 2017 WL 2484098, at *3–4 (D. Mass. June 8, 2017); Perkins v. Russo, No. 02-cv-10460-MLW, 2007 WL 2507741, at *3 (D. Mass. Aug. 31, 2007) (citing LR, D. Mass 7.1(b)(1) and LR, D. Mass 1.3).

---

later filings [must] be viewed." See Barresi v. Maloney, 296 F.3d 48, 52 & n.1 (1st Cir. 2002) (quoting Scarpa v. DuBois, 38 F.3d 1, 7 (1st Cir. 1994)). Specifically, "[i]f . . . it cannot be said that the petitioner abandoned his or her federal claims on appeal to the SJC, federal exhaustion review includes consideration of the petitioner's lower court filings as a 'backdrop' to his or her ALOFAR." Id. (citing Mele v. Fitchburg Dist. Ct., 850 F.2d 817, 822 (1st Cir. 1988) and Scarpa, 38 F.3d at 7 n.3). In contrast, "where it is clear that a petitioner has, on appeal to the SJC, abandoned federal constitutional claims advanced before the lower courts, it is entirely appropriate to limit the exhaustion inquiry to the 'four corners' of the ALOFAR." Id. (citing Mele, 850 F.2d at 822). Because Petitioner abandoned the federal due process claim he asserted in his motion for a new trial, the Court has considered only the ALOFAR in its exhaustion analysis. See id. (citing Mele, 850 F.2d at 822).

11

1. Appeals Court Decision

Petitioner argued to the Appeals Court that the motion judge erred when he granted the motion in limine to admit J.R.'s testimony's at trial, that the trial judge erred when he did not sua sponte reconsider the motion judge's order admitting J.R.'s testimony, that the trial judge erred when he did not limit the prior bad act testimony given its prejudicial effect, and that the trial judge erred when he held that prior bad act evidence could be used to corroborate victim testimony. [S.A. at 18–19]. The Appeals Court rejected any claim of error in admitting the evidence. Robertson, 35 N.E. 3d at 774.

The Appeals Court reaffirmed that Massachusetts law permits the admission of prior bad act evidence to demonstrate "a common scheme, pattern of operation, absence of accident or mistake, identity, intent or motive" as long as the evidence is "connected in time, place, or other relevant circumstances to the particular sex offense for which the defendant is being tried." Id. at 774 n.6 (quoting Commonwealth v. Hanlon, 694 N.E. 2d 358, 366 (Mass. 1998)). The Appeals Court also concluded that "under decisional case law prior bad act evidence showing a pattern of conduct 'can be admitted . . . where it corroborates the victim's testimony,'" but that, in any event, J.R.'s testimony was admissible to show a pattern of operation and was not unduly prejudicial. Id. (quoting Hanlon, 694 N.E.2d at 366).

In so holding, the Appeals Court explained that the prior bad act evidence could be used to show a pattern of conduct by Petitioner and to corroborate victim testimony because the incidents with J.R. and N.M. were sufficiently factually similar and not too remote in time. Id. at 774–75. Similarities observed by the Appeals Court included that both girls were the same age during the abuse; both girls considered Robertson to be a "father-like figure;" Robertson threatened both girls by "telling them that they would be taken away from their families if they

reported the abuse;" and, the abuse itself was "almost identical in nature." Id. at 774. The Appeals Court reasoned that these close factual similarities did not render the interval of time that passed between the events too remote for the evidence to be admissible. Id. at 776. The Appeals Court also held that the trial judge did not err in admitting the evidence based on it being allegedly unduly prejudicial because J.R.'s testimony was "neither overwhelming or 'extremely detailed.'" Id. at 776–77. Further, the Appeals Court determined that the jury instructions regarding J.R.'s testimony made clear that the evidence could not be used to show propensity. Id. at 777.

2. Admission of Prior Bad Act Evidence[9]

Petitioner argues that the admission of J.R.'s testimony for the purpose of "corroboration" was "objectively unreasonable" and "denied [him] due process of law in violation of the Fifth and Fourteenth Amendments." [ECF No. 26 at 12, 14]. He further alleges that J.R.'s testimony related only to his "general disposition to commit the [charged] offenses" and was irrelevant to any of the "lawfully recognized purposes of prior bad acts testimony" such as motive, opportunity, or plan. [Id. at 14]. He further contends that admission of the prior bad act testimony from J.R. resulted in prejudice to him that "so infected the trial with unfairness as to make the resulting conviction a denial of due process." [Id. at 14–15].

While it is fundamental to habeas jurisprudence that a state court's application of state evidentiary law is not a permissible ground for habeas relief *per se*, where a state law or practice "betrays a fundamental principle of justice," such conduct may implicate a petitioner's due

---

[9] Any argument that the trial court failed to follow Massachusetts evidentiary law cannot be properly adjudicated by a habeas petition. See Estelle v. McGuire, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); Rodriguez v. Spencer, 412 F.3d 29, 37 (1st Cir. 2005) ("Federal courts sitting in habeas must accept state law rulings on state law issues.").

13

process rights and form a basis for federal habeas relief. See DeLong v. Brady, 723 F. Supp. 2d 376, 385 (D. Mass. 2010) (citing Sanna v. Dipaolo, 265 F.3d 1, 11 (1st Cir. 2001), then Cooper v. Oklahoma, 517 U.S. 348, 363–65 (1996), and then Chambers v. Mississippi, 410 U.S. 284, 302–03 (1973)). To permit habeas relief, a state court's application of state law must be "so arbitrary or capricious as to constitute an independent due process . . . violation." Coningford, 640 F.3d at 484 (quoting Lewis v. Jeffers, 497 U.S. 764, 780 (1990)). The First Circuit has acknowledged that "it may be theoretically possible to find that a state court's evaluative judgement [on an evidentiary ruling] was such an unreasonable application of clearly established federal constitutional standards as to result in a fundamentally unfair trial," but has emphasized that such cases "will be very rare." Kater, 459 F.3d at 64.

The instant case is not one of the rare instances in which a state court's evidentiary ruling necessitates habeas relief. The Appeals Court's conclusion that the prior bad act evidence was properly admitted was reasonable and did not contravene any fundamental principles of justice. The Appeals Court carefully considered the evidence at issue and concluded that the testimony was admissible under Massachusetts law based on the striking similarities between the two instances of abuse—which demonstrated a pattern of behavior—including the relationship Petitioner had with his victims, the age of the victims, and the "almost identical" abuse. See Robertson, 35 N.E.3d at 774–75. In addition, although the evidentiary ruling was adverse to Petitioner, it was not unfairly prejudicial. The trial court excluded the most prejudicial aspects of the testimony before trial began, the testimony on direct was brief and limited to the facts most probative of a pattern of behavior, and the trial court gave repeated instructions about permissible uses for the testimony. [S.A. at 374, 844–49, 1085–86]. Given the safeguards implemented by the trial court, it was reasonable for the Appeals Court to conclude that the

probative value of the testimony outweighed the risk of unfair prejudice to Petitioner, and that the restrained admission of this testimony did not "so infect" the trial as to result in a due process violation.

The conclusion that the admission of the prior bad act evidence did not violate Petitioner's due process rights is further supported by the Federal Rules of Evidence, which Petitioner relies on in his brief. See [ECF No. 26 at 12]. Although these arguments are not directly relevant to the case because the Federal Rules of Evidence are inapplicable in state courts, some courts in this district have relied on the Federal Rules of Evidence by analogy when faced with a due process habeas claim related to the admission of prior bad act evidence. See DeLong, 723 F. Supp. 2d at 387–88; Pagan v. Dickhaut, 578 F. Supp. 2d 343, 350 (D. Mass. 2008). They reason that a court can conclude that a petitioner received due process if the state court's evidentiary ruling would also have been proper under the Federal Rules of Evidence. See DeLong, 723 F. Supp. 2d at 387–88; Pagan, 578 F. Supp. 2d at 350.

Federal Rule of Evidence 413 permits "evidence that [a] defendant committed any other sexual assault" in criminal cases in which a defendant is accused of sexual assault, so long as the evidence is relevant and its probative value is not outweighed by the danger of unfair prejudice. Fed. R. Evid. 413; see Fed. R. Evid. 401; Fed. R. Evid. 403. Here, J.R.'s testimony of her abuse was highly relevant to the issue of whether Petitioner had sexually abused N.M., and its probative value, based on the similarities of the crimes, was not outweighed by the danger of unfair prejudice to the Petitioner. See United States v. Gaudet, No. 2:16-cr-173-GZS, 2017 WL 5196389, at *2 (D. Me. Nov. 9, 2017) (admitting testimony from defendant's daughter who was subject to prior sexual assault in case where defendant was charged with sexually assaulting another daughter). Because the prior bad act evidence would have been admissible under the

Federal Rules of Evidence, the Court separately concludes that there was no due process violation and that the Appeals Court's decision was not contrary to clearly established federal law. Cf. DeLong, 723 F. Supp. 2d at 387–88; Pagan, 578 F. Supp. 2d at 350. Accordingly, the Petitioner may not sustain a habeas claim on the admission of J.R.'s testimony.

### 3. Limiting Instruction on Prior Bad Act Evidence

Petitioner also argues that the trial court's limiting instruction concerning the use of prior bad act evidence, which was reiterated in the final jury instructions, exacerbated the effect of the prior bad act testimony because it "exceeded the motion judge's order and explicitly allowed the jury to consider the prior bad act[s] testimony for inadmissible purposes." [ECF No. 26 at 15].[10]

"Before a federal court may overturn a conviction resulting from a state trial [because of an erroneous jury instruction], it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." Lucien v. Spencer, No. 07-cv-11338-MLW, 2015 WL 5824726, at *12 (D. Mass. Sept. 30, 2015) (citing Cupp v. Naughten, 414 U.S. 141, 147 (1973)); see also Gaines v. Matesanz, 272 F. Supp. 2d 121, 131 (D. Mass. 2003) ("As a general rule, improper jury instructions will not form the basis for federal habeas corpus relief. The question presented to the federal court is whether the challenged jury

---

[10] A review of the record indicates that Petitioner's characterization of the challenged jury instructions as exceeding the motion judge's order is inaccurate. The motion judge concluded that J.R.'s testimony was "probative to show that the defendant's alleged assault on N.M. was not an isolated incident, but rather the product of a pattern of behavior . . . ." [S.A. at 128]. He instructed that the "testimony may also serve to corroborate the testimony of the alleged victim, whose credibility is, perhaps, the most essential issue that the jury must consider." [Id.]. He also found that the probative value of the evidence was not substantially outweighed by the danger of prejudice and allowed the testimony to be admitted for the following limited purposes, "subject to appropriate time limits and limiting instructions:" "to prove that [Petitioner] had a plan to sexually assault young girls with whom he had a parenting like relationship, or to show [his] pattern of conduct in doing so, or to corroborate the testimony of the alleged victim concerning the crimes charged." [Id. at 126, 129]. The jury instructions did not exceed these parameters. See [id. at 845–46, 1085–86].

instructions violated the petitioner's constitutional rights." (internal citations and quotations omitted)).  To establish such a constitutional violation, "the petitioner must show that the allegedly defective jury instruction 'so infected the entire trial that the resulting conviction violates due process.'"  Lucien, 2015 WL 5824726, at *12 (quoting Estelle, 502 U.S. at 72).

In short, Petitioner has not made the requisite showing.  Petitioner's argument for habeas relief based on the allegedly erroneous jury instructions is premised on his conclusion that it was improper for the jury to consider J.R.'s testimony as corroborating.  See [ECF No. 26 at 15 (asserting that jury instructions exacerbated the prejudicial effects of J.R.'s testimony because the instructions "explicitly allowed the jury to consider the prior bad act[s] testimony for inadmissible purposes")].  As explained supra in Section IV.B.2, a claim that a state court erroneously applied state evidentiary law is not a proper ground for habeas relief, and the Appeals Court's ruling affirming the use of J.R.'s testimony was not contrary to clearly established federal law.

Further, there is no indication that the instructions "so infected the entire trial" and thereby violated Petitioner's due process rights.  The jury was given clear instructions on the permissible uses of J.R.'s testimony and told not to consider the testimony "as proof that the defendant has a criminal personality or a bad character."  [S.A. at 1084–86].  The jury was also instructed "not [to] use [J.R.'s testimony] to conclude that if you determine the defendant committed acts with his daughter [J.R.], it must follow that he committed acts with the Complainant [N.M.], as well."  [Id. at 845–46].  These instructions did not give the jury license to use J.R.'s testimony for an impermissible purpose and they carefully cabined the ways in which the testimony could be considered.  The Court presumes that the jury faithfully followed

these instructions, and finds no constitutional violation. See Richardson v. Marsh, 481 U.S. 200, 206 (1987).

## V. CONCLUSION

For the reasons discussed above, Robertson's petition for a writ of habeas corpus [ECF No. 1] is <u>DENIED</u>. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to" a habeas petitioner. Rules Governing Section 2254, Cases, R. 11(a). Here, the Court declines to grant a certificate of appealability to Petitioner.

**SO ORDERED.**

June 17, 2019 /s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE